UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

INFOLINK PANAMA CORPORATION,
a Panama corporation, FORTATRUST
USA CORPORATION, a Delaware
corporation,

      Plaintiffs,

v.                               CASE NO.: 14-22099-CIV-MORENO

CORESPACE, INC, a Nevada corporation,
MARK WULFF, an individual, and
LIANA DUNLAP, an individual,

      Defendants.
_____/

**DEFENDANT CORESPACE, INC.'S**
**RESPONSE TO PLAINTIFFS' MOTION TO ENTER DEFAULT JUDGMENT AND**
**MOTION TO STRIKE OR STAY CONSIDERATION OF DEFENDANT'S**
**MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Subject to its previously filed Corrected Motion to Dismiss and Incorporated
Memorandum of Law [ECF No. 15],[1] comes now Defendant CoreSpace, Inc., a Nevada
corporation ("CoreSpace"), pursuant to Federal Rule of Civil Procedure 55(c) and 60(b), and
hereby files this Response to Plaintiffs' Motion to Enter Default Judgment and Motion to Strike
or Stay Consideration of Defendant's Motion to Dismiss and Incorporated Memorandum of Law
and would respectfully show the Court as follows:

**I.**
**SUMMARY**

CoreSpace respectfully requests an order of this Court denying Plaintiffs' motion to enter

---

[1] ECF No. 15 was filed in response to the Court's Order (ECF No. 14) regarding Defendant's Motion for Leave
(ECF No. 11).

a final default judgment against it because good cause exists to vacate the default judgment entered in the state court and the failure to timely answer or otherwise respond was merely a mistake. In fact, as demonstrated below, CoreSpace's failure to timely answer or otherwise respond was the result of (1) Plaintiffs' failure to comply with the Florida long-arm statute and improper service on a mere employee without attempting service on all prior persons designated under the Fla. Stat. § 48.081 and (2) Plaintiff's failure to comply with Florida law that forbids the attempt to take a default against a party known to be represented by counsel without notification. Further, the short time period since the default was entered will cause no meaningful prejudice to Plaintiffs.

Even if the Court were to find that Plaintiffs' service of CoreSpace was proper, CoreSpace has satisfied the standards under both FED. R. CIV. P. 55(c) and 60(b) that mistake or excusable neglect occurred and vacating the default judgment is warranted. For these reasons, this Court should deny Plaintiffs' motion, vacate the default judgment against CoreSpace, and allow this case to proceed on the merits.

## II.
## FACTS

### A.    The Lawsuit

Defendant CoreSpace, Inc. ("CoreSpace") is a Nevada corporation with its principal place of business in Texas that provides computer server technology and incidental services using its servers that are mainly located in Texas, none of which are located in Florida. This lawsuit arises from two contracts to which CoreSpace is not a party. In January 2014, non-party Ace Colocation Services, Inc. executed two agreements with Plaintiffs: an "Agreement for Colocation and Purchase" [ECF No. 1, pp. 31-47] and an "Asset Purchase and Sale Agreement" [ECF No. 1, pp. 48-64]. Ace Colocation, Inc. ("Ace") is a customer of CoreSpace and has

affiliated ownership with CoreSpace. *See* Exhibit B, Declaration of Liana Dunlap at ¶ 5 (incorporated and adopted herein). Ace is a Nevada corporation with its principal place of business in Texas. [Ex. B, ¶ 5]. CoreSpace, however, did not negotiate the two agreements, much less agree to any obligations thereunder. [Ex. B, ¶ 6-7].

On April 17, 2014, Plaintiffs filed the instant lawsuit in the Circuit Court of the Eleventh Judicial District in and for Miami-Dade County, Florida in a misguided attempt to avoid the contractual limitations in the two relevant agreements [ECF No. 1, Ex. B]. Plaintiffs' claims of fraudulent inducement, breach, unjust enrichment, and deceptive trade practices, however, are all entirely based on these two agreements and arise therefrom. Plaintiffs attempt to wrongfully hale CoreSpace into litigation in Florida by not suing or even joining the contracting party, Ace, because these two agreements require all litigation to be venued in Texas and subject to Texas law. [*See, e.g.*, ECF No. 1, p. 35]. CoreSpace has never operated, conducted, engaged in, or carried on a business or business venture in Florida and do not have and has never had an office or agency in Florida. [Ex. B, ¶ 3]. CoreSpace has never engaged in solicitation or service activities in Florida or directed solicitation or service activities towards Florida; rather CoreSpace conducts its business from Texas. [Ex. B, ¶ 3].

CoreSpace has had a small, insubstantial number of customers who are based in Florida, whose connection to CoreSpace is through online computer servers (none of which are located in Florida) that are not purposefully directed towards Florida and are not the basis from which Plaintiffs' claims arise in this case. [Ex. B, ¶ 3]. CoreSpace does not transact business in Florida and is not registered with the Florida Secretary of State. [Ex. B, ¶ 3]. CoreSpace has never had offices, vehicles, real property, fax numbers, telephone numbers, message services, mailing addresses or bank accounts, among other things, in Florida. [Ex. B, ¶ 3].

## B.    Improper Service

On April 28, 2014, CoreSpace, Inc. executed an engagement letter with the law firm of Gruber Hurst Johansen Hail Shank LLP, located in Dallas, Texas, with regard to the above-captioned litigation (the "Lawsuit"), a true and correct copy of which is attached hereto as Exhibit "A-1." *See* Exhibit A, Declaration of Brian N. Hail at ¶ 3-4 (incorporated and adopted herein). Pursuant to the engagement letter, CoreSpace, Inc. in fact paid $5000 as a retainer to the Firm. [Ex. A, ¶ 4]. Also, pursuant to the engagement letter, lead counsel, Brian Hail, located potential local counsel for CoreSpace, Inc. in the Lawsuit in Florida, namely Mr. James Ferrara with Shraiberg, Ferrara & Landau, P.C. ("Florida Counsel"). [Ex. A, ¶ 5]. On May 19, 2014, CoreSpace signed an engagement letter with Florida Counsel (as well as paid a $500 retainer) and forwarded same to Mr. Hail's attention, a true and correct copy of which is attached hereto as Exhibit "A-2." [Ex. A, ¶ 5].

At approximately 10:00 a.m. on May 7, 2014, Christopher Shaffer was working at CoreSpace when he heard the front doorbell rang.[2] Mr. Shaffer is an employee at CoreSpace with the title of director of information technology. [Ex. C, ¶ 2]. He answered the door to find a man he later learned was Carlos Barrera from Legal Process Service & Investigations, LLC. [*Id.*]. Barrera said he was looking for "Mark Wulff" and "Liana Dunlap." [*Id.*]. Mr. Shaffer had not seen them in the office that day so told Barrera they were not present. Barrera did not ask for any other persons, whether by name specifically or title (officer, director, etc.). [*Id.*]. Barrera asked Mr. Shaffer his name and position, which Mr. Shaffer gave him. [*Id.*].

Barrera then handed Mr. Shaffer a sealed manila envelope and said they were "for the company." [Ex. C, ¶ 3].  Barrera did not give any indication regarding the nature or contents of

---

[2] Exhibit C, Declaration of Christopher Shaffer at ¶ 2 (incorporated and adopted herein).

the envelope, much less that it contained documents related to a lawsuit. [*Id.*]. The envelope itself also did not have any markings or labels to indicate its nature or contents, much less that that is contained documents related to a lawsuit. Barrera then left the building. [*Id.*].

Shortly thereafter on that same day, Mr. Shaffer gave the still-sealed envelope to Mark Wulff. [Ex. C, ¶ 3]. Mr. Shaffer did not have any further interaction with the envelope or its purported contents, and he did not recognize at any time that the envelope contained what is purported to be actual process. [*Id.*].

After receiving the envelope, Mr. Wulff soon thereafter left the still-sealed envelope in a pile of other items in his workspace.[3] Approximately three to seven days later, Mr. Wulff opened the enveloped, noted only that the documents appeared to be related to lawsuit documents that had previously been emailed to CoreSpace on or about April 17, 2014, and put the contents of the envelope on the desk of CoreSpace President, Liana Dunlap, but did not speak with her about the documents, as she was not present at the time. [Ex. D, ¶ 3]. Mr. Wulff did not have any further substantive contact with the envelope or its contents. [*Id.*]. Wulff did not recognize at any time that the envelope contained what is purported to be actual process. Mr. Wulff did not speak with any attorneys regarding receipt of these documents. [*Id.*].

On or about May 12-14, 2014, Ms. Dunlap first noticed the documents placed on her desk by Mr. Wulff that Plaintiffs claim represented appropriate service of process. [Ex. B, ¶ 11]. At the time Ms. Dunlap first noticed the documents, Ms. Dunlap thought the documents were merely printout copies from Mr. Wulff of documents emailed to her previously by Plaintiffs on or about April 17, 2014. [Ex. B, ¶ 11]. With her limited legal knowledge and expectation of receiving service directly or through CoreSpace's registered agent, Capitol Services Corporation

---

[3] Exhibit D, Declaration of Mark Wulff at ¶ 2 (incorporated and adopted herein).

of Austin, Texas, there was no indication to Ms. Dunlap from the face of the documents that they had been served by a process server or that they purported to be actual service of process. [Ex. B, ¶ 11]. Ms. Dunlap simply did not recognize the documents were allegedly actual service of process and, accordingly, Ms. Dunlap did not speak with any attorneys regarding receipt of these documents at the time. [Ex. B, ¶ 11].

Without knowledge of the purported "service" upon CoreSpace's I.T. Director, on May 18, 2014, Mr. Hail sent an email to counsel for Plaintiffs, a true and correct copy of which is attached hereto as Exhibit "A-3," in which he notified Plaintiffs' counsel that (1) he represents all three Defendants with regard to Plaintiffs' suit, (2) his understanding that service had not been completed on any of the Defendants, (3) offering to accept service for all three Defendants, pursuant to Florida state procedural law, if the citation was in good form, and (4) requesting that Plaintiffs' employees stop contacting Defendants' employees. [Ex. A-3]. Plaintiffs' counsel never responded to this email. [Ex. A, ¶ 7].

On May 19, 2014, Mr. Hail sent another email to counsel for Plaintiffs again containing the points above and again specifically requesting that Plaintiffs' employees stop contacting Defendants' employees. [Ex. A-3]. Plaintiffs' counsel never responded to this email either. [Ex. A, ¶ 7]. Counsel for Plaintiff made no known effort to communicate with Mr. Hail or his law firm prior to any alleged default in the Lawsuit. [Ex. A, ¶ 8].

On May 29, 2014, Plaintiffs filed a Verified Return of Service and Summons stating that its process server had served summons upon "Mark Schaffer as I.T. Director," an alleged employee of CoreSpace [ECF No. 1, pp. 125-126]. [4] In truth, CoreSpace does not have and has not had an employee named "Mark Schaffer." In any event, CoreSpace has never treated its I.T.

---

[4] See Exhibit E, Verified Return of Service; see also Defendants' Notice of Removal and accompanying filings.

Directors as officers, board members, managers, or registered agents. [Ex. B, ¶ 4]. That same day, the Florida State Court granted Plaintiffs' motion for default judgment and entered an order of default judgment against CoreSpace, but did not award any specific amount of damages [ECF No. 1, pp. 128-129].

On or about June 2, 2014, while checking the online docket for the Florida state court in which the lawsuit had been filed, Dunlap first noticed a motion for default judgment on file and order. [Ex. B, ¶ 12]. After consulting with counsel for the first time regarding the documents on her desk, this was the first moment Dunlap recognized the possibility that Plaintiffs had attempted service by leaving the documents Dunlap had found on her desk as actual service of process. [*Id.*].

**C.      Post-Removal Pleadings**

On June 6, 2014, CoreSpace filed its notice of removal, thereby removing this case to the United States District Court for the Southern District of Florida [ECF No. 1]. On June 13, 2014, CoreSpace filed a motion to dismiss this case pursuant to FED R. CIV. P. 12 [ECF No. 7] (while subsequently denied pursuant to Local Rule 7.1(c)(2), was resubmitted via CoreSpace's corrected Motion to Dismiss [ECF No. 15, filed pursuant to the Court's Order (ECF No. 14)]). On June 17, 2014, Plaintiffs filed their "Motion to Enter a Default Final Judgment Against CoreSpace and to either Strike the Motion to Dismiss or Stay Consideration" [ECF No. 8]. On June 19, 2014, CoreSpace filed its "Motion to Vacate and Set Aside Default Judgment and Incorporated Memorandum of Law" [ECF No. 12].

**III.**
**ARGUMENTS AND AUTHORITIES**

In the Eleventh Circuit, "defaults are seen with disfavor because of the strong policy of determining cases on their merits." *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir.

1993). "As a general proposition, Courts do not favor disposition of legitimate disputes by default and lean over backwards to relieve defaults if the party seeking the relief was diligent and had a legitimate defense against the claim asserted." *Riverwood Land Co. v. Tayler*, 216 B.R. 985, 987-8 (M.D. Fla. 1997). While the party seeking relief has the burden of proof, "the burden is not difficult to overcome. A plausible explanation which supports the relief sought shall suffice and warrants the granting of such relief." *Id.*

CoreSpace respectfully requests an order of this Court vacating and setting aside the default judgment entered against CoreSpace pursuant to the authority granted the Court under Federal Rules of Civil Procedure 55(c) and 60(b).[5] Denying Plaintiffs' motion and vacating the judgments is justified under each rule based on the circumstances of this case, particularly in light of Plaintiffs' misconduct.

## A.    Good Cause Exists Under Rule 55(c) to Vacate the Default Judgment

"It is the general rule that default judgments are ordinarily disfavored because cases should be decided upon their merits whenever reasonably possible." *Creative Tile Marketing, Inc. v. SICIS Intern., S.r.L.*, 922 F. Supp. 1534, 1536 (S.D. Fla. 1996). A court may set aside a clerk's default for good cause shown. FED. R. CIV. P. 55(c); *see also Compania Interamericana Export–Import, S.A. v. Compania Dominicana de Avacion*, 88 F.3d 948, 951 (11th Cir. 1996).

"'Good cause' is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of substance." *Compania Interamericana*, 88 F.3d at 951. To determine whether "good cause" exists, the Court considers "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Id.*

---

[5] Where a case is filed in state court, a default is entered in state court, the action subsequently removed to federal court, and a motion to vacate/set aside is filed, Federal Rules of Civil Procedure 55, 60, etc. govern determination of the matter. *See, e.g., Wane v. Loan Corp.*, 8:11-CV-2126-T-33AEP, 2012 WL 260467 (M.D. Fla. 2012).

### 1.   Defendants' Default was Not Culpable or Willful

Default was not willful where "Defendant filed the present motion less than one week after entry of default and there is no suggestion that Defendant is acting in bad faith." *Access for the Disabled, Inc. v. Milan Consulting, Inc.*, 12-62008-CIV, 2013 WL 322517 (S.D. Fla. 2013). Good reason existed for failure to reply to the complaint when two defendants were never personally served, but their attorney offered to accept service on their behalf but the correspondence was not clear on the deadlines; stronger case for existence of good reason where a third defendant was never served and its attorney never accepted service on its behalf nor was he asked to do so. *Max Specialty Ins. Co. v. A Clear Title & Escrow Exch. LLC*, 8:12-CV-727-T-26MAP, 2012 WL 6021468 (M.D. Fla. 2012).

In this case, as shown above, CoreSpace's default was not willful but was merely the result of mistake brought upon by the misconduct of Plaintiffs during the service of process procedure. Here, Plaintiffs' counsel knew prior to his defective service on CoreSpace that CoreSpace was represented by counsel who had conditionally agreed to accept service, yet Plaintiffs' counsel went ahead and pushed for default on what in fact was defective service. [*See* Ex. A-3]. Defendants' I.T. Director, a mere employee who could not reasonably be expected to recognize the import of the service documents, was the recipient of Plaintiffs' wrongful service. [*See, e.g.*, Ex. C]. The I.T. Director provided the materials to Mark Wulff, who approximately 3-7 days later placed them on the desk of CoreSpace's President, Liana Dunlap, without her present and without notifying her. [*See, e.g.*, Ex. D]. Upon eventually seeing the documents some days later, Dunlap—a businesswoman without legal training—was under the belief that such service was improper and ineffective given it was made to a non-officer without any known attempts made on CoreSpace's registered agent (Capitol Services) or any officers or managers of

CoreSpace. [*See* Ex. B, ¶ 10-12]. Rather than any intent or willfulness, CoreSpace's actions reflect a mere mistake that, as shown below, is actually <u>not</u> a mistake because Plaintiffs did actually fail to effectuate proper service when they served the I.T. Director (*see* § B.2 below).

Even if the Court determines the Plaintiffs did properly effectuate service upon CoreSpace, the above facts demonstrate more than sufficient grounds for a finding that CoreSpace's failure to timely answer or otherwise respond was due to a mere mistake. Accordingly, this factor is satisfied in CoreSpace's favor.

### 2.    Setting Aside the Default Judgment will Not Prejudice Plaintiffs

"Relatively minor delays or increased litigation expenses do not qualify as actual prejudice that would justify the denial of relief under Rule 55(c)". *See Gagnon v. Fortner*, Case No. 12–60478–CIV–MARRA, 2012 U.S. Dist. LEXIS 117868, at \*22–23, 2012 WL 3613879 (S.D. Fla. Aug. 21, 2012) (finding that increased expense of litigation is not 'actual prejudice') (citing *Burrell v. Henderson*, 434 F.3d 826, 835 (6th Cir. 2006) ("Delay in adjudicating a plaintiff's claim does not qualify as sufficient prejudice under Rule 55. Instead, [a plaintiff] would have to show that the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties."))." *Access for the Disabled, Inc. v. Milan Consulting, Inc.*, 12-62008-CIV, 2013 WL 322517 (S.D. Fla. 2013).

In this case, there can be no reasonable belief that Plaintiffs will be injured by vacating the default judgment. Plaintiffs obtained the default judgment four weeks ago, and, as described above, through defective service and misconduct. To force Plaintiffs back into litigation after such a short hiatus will do nothing to cause a loss of evidence, increased opportunities for fraud, or discovery difficulties, particularly given that most cases, particularly of such value as this one, do not begin discovery for a month or two after the initial filing. Any costs or time expended are

more than likely *de minimis* and cannot outweigh CoreSpace's right to defend against the frivolous claims asserted against them.

### 3.     Defendants Present Many Meritorious Defenses

A meritorious defense is one that is likely to be successful, properly supported by a factual basis. *Monticello Ins. Co. v. Dynabilt Mfg. Co., Inc.*, 2005 WL 3019241, at *2 & n. 1 (M.D. Fla. 2005) (citing *In re Worldwide Web*, 328 F.3d at 1296, and *Turner Broadcasting Sys., Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 1002 (N.D. Ga. 1983)).

In this case, CoreSpace has numerous meritorious defenses to Plaintiffs' claims. At the outset, CoreSpace adopts and incorporates herein the arguments as contained in its Corrected Motion to Dismiss and Incorporated Memorandum of Law [ECF No. 15]. As outlined in the motion to dismiss, Plaintiffs' claims should be dismissed for a variety of reasons under FED. R. CIV. P. 12(b), including:

   (a)     Insufficient Service of Process (FED. R. CIV. P. 12(b)(5)), which is based on Plaintiffs' failure to comply with the Florida long-arm statute (FLA. STAT. ANN. § 48.081) during service in this lawsuit;

   (b)     Failure to State a Claim Upon Which Relief Can Be Granted (FED. R. CIV. P. 12(b)(6)), which is based on, *inter alia*, that:

        a.   CoreSpace is not a party to the contracts at issue;

        b.   In the contracts at issue, CoreSpace was specifically released from the liabilities upon which they are now sued;

        c.   Plaintiffs did not justifiably rely on the alleged fraudulent misrepresentations regarding a "quick" closing or that CoreSpace would be purchasing the assets because both facts were expressly changed in the written contracts;

        d.   Plaintiffs have simply failed to allege any breach of Florida's UCC statute;

        e.   Plaintiffs' unjust enrichment claim is merely in quasi-contract and cannot stand due to the existence of a governing contract; and

      f.   No deceptive practices occurred and Plaintiffs did not act reasonably in the alleged transactions by purportedly relying on the alleged fraudulent misrepresentations regarding a "quick" closing or that CoreSpace would be purchasing the assets because both facts were expressly changed in the written contracts.

    (c)   <u>Lack of Personal Jurisdiction Over Defendants</u> (FED. R. CIV. P. 12(b)(2)), which is based on the fact that, as described above, Defendants are not within reach of the Florida long-arm statute under either specific or general jurisdiction given their insubstantial contacts with Florida and the fact that the claims in this case do not arise from any contacts with Florida.

    (d)   <u>Failure to Join a Party Under Rule 19</u> (Fed. R. Civ. P. 12(b)(7), which is based on the fact that Plaintiffs have failed to join the party that actually executed the agreements upon which all of the claims rest, i.e. Ace Colocation, Inc.

In addition to the arguments on the pleadings, CoreSpace also has meritorious defenses to all four claims based on a few simple facts: (1) CoreSpace is not a party to the contracts at issue; (2) CoreSpace does not hold title to the products allegedly sold; and (3) CoreSpace did not negotiate the contracts at issue. [Ex. B, ¶ 6-7]. For all these reasons, this Court can and should deny Plaintiffs' motion and vacate the default judgment against CoreSpace under FED. R. CIV. P. 55(c).

**B.    The Judgment Should Be Set Aside Under FED. R. CIV. P. 60(b)(1), (3), and (4)**

Even if the Court were to find that the "good cause" standard under Rule 55 does not apply, this Court should vacate the default judgment under Rule 60(b). In this case, the Court has three separate grounds under Rule 60(b) that justify relief from the default judgment entered against CoreSpace: mistake, inadvertence, or excusable neglect; misconduct by Plaintiffs; and void judgment due to improper service of process.

**1.    Mistake or Excusable Neglect Justify Vacating the Default in this Case**

"To establish mistake, inadvertence, or excusable neglect under Rule 60(b)(1), a defaulting party must show that: '(1) it had a meritorious defense that might have affected the

outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint.'" *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (citing *Fla. Physician's Inc. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993) (citing *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990))).

As shown above under Section A, CoreSpace has numerous meritorious defenses that would have affected the outcome of a proceeding on the merits and Plaintiffs will not be prejudiced by vacating the judgment. Further, good reason existed for CoreSpace's failure to timely answer or otherwise plead: Plaintiffs' attempted service was actually defective and led to understandable confusion for a client not versed in the vagaries of Florida's long-arm statute, and it was merely a mistake that CoreSpace did not recognize that service upon its information technology director might arguably constitute proper service under Florida law or the U.S. Constitution (assuming, *arguendo*, that such service was proper at all) and that CoreSpace did not adequately appreciate the time-sensitive nature of documents that appeared to have been mere copies of others previously received by email. [Ex. B, ¶ 11-12]. After realizing its error, CoreSpace acted promptly to determine the gravity of the issue and respond accordingly. [Ex. A, ¶ 9-10]. Accordingly, this Court should deny Plaintiffs' motion and vacate the judgment under FED R. CIV. P. 60(b)(1).

### 2. Plaintiffs' Misconduct via Improper Service Supports Relief Under Rule 60(b)(3)

Under FED. R. CIV. P. 60(b)(3), a court may set aside a judgment due to the existence of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." In this case, Plaintiffs have attempted to force through a default based on improperly obtained service of process that blatantly violates Florida law. Under FLA. STAT. §

48.081(1), process against any foreign corporation may be served:

> (a) On the president or vice president, or other head of the corporation;
>
> (b) In the absence of any person described in paragraph (a), on the cashier, treasurer, secretary, or general manager;
>
> (c) In the absence of any person described in paragraph (a) or paragraph (b), on any director; or
>
> (d) In the absence of any person described in paragraph (a), paragraph (b), or paragraph (c), on any officer or business agent residing in the state.

"If a foreign corporation has none of the foregoing officers or agents in this state, service may be made on any agent transacting business for it in this state." FLA. STAT. § 48.081(2).[6]

Where a foreign corporation does not transact business in Florida, is not qualified to transact business in Florida, is not served through its agent in Florida, but is instead served in a foreign jurisdiction through a non-officer, the proof of service must demonstrate that service occurred in compliance with the tiered system under FLA. STAT. § 48.081(1)-(3).  *S.T.R. Indus., Inc. v. Hidalgo Corp.*, 832 So. 2d 262, 264 (Fla. 3d DCA 2002). "To obtain personal jurisdiction over a corporate defendant, a return of process showing service on an inferior officer of a corporation must show all superior officers designated in the statute were absent when service was attempted." *Nat'l Safety Assoc., Inc. v. Allstate Ins. Co.*, 799 So. 2d 316, 317 (Fla. 2d DCA 2001).

Additionally, the analysis should strongly consider whether "the plaintiff seeking default had actual knowledge that the defendant was represented by counsel and intended to defend the lawsuit, but failed to contact the defendant's counsel prior to seeking default." *U.S. Bank Nat'l*

---

[6] FLA. STAT. § 48.081(3)(a) allows for alternative service through, first, the agent designated under § 48.091, and, second, on any employee at the corporation's principal place of business or any employee of the registered agent. Such methods, however, do not apply to CoreSpace—a foreign corporation not transacting business in Florida—because § 48.091 only requires foreign corporations "now qualified or hereafter qualifying to transact business in [Florida to] designate a registered agent and registered office...."

*Ass'n v. Lloyd*, 981 So. 2d 633, 639 (Fla. 2d DCA 2008) (quotation omitted). "If the plaintiff is aware that the defendant is represented by counsel and intends to defend the litigation on the merits, it is required to serve the defendant with notice of the application for default and to present the matter to the court for entry of the default." *Makes & Models Magazine, Inc. v. Web Offset Printing Co., Inc.*, 13 So.3d 178 181 (Fla. 2d Dist. 2009) (citing *Lloyd*, 981 So.2d at 639). A default that does not comply with this requirement "must be vacated without regard to whether the defendant can establish a meritorious defense or whether the defendant can demonstrate inadvertence or excusable neglect." *Lloyd*, 981 So.2d at 640.

In this case, CoreSpace is a foreign corporation that does not transact business in Florida, is not qualified to transact business in Florida, and is not served through its agent in Florida. Nonetheless, Plaintiffs claim they properly served CoreSpace by having process served on CoreSpace's Information Technology Director (a mere employee) at CoreSpace's offices in Dallas, Texas [ECF No. 1, p. 126]. While the verified return states that the "Registered Agent was not present," there is no statement or evidence to show that any of the persons listed in § 48.081(1)(a)-(d). In fact, CoreSpace does not actually employ any person named "Mark Shaffer," which is the name of the purported employee that was served. [Ex. B, ¶ 4]. At the time of the illegitimate service in this case, CoreSpace's registered agent, as submitted to the Texas Secretary of State, was and remains Capitol Corporate Services, Inc., whose address is 800 Brazos, Suite 400, Austin Texas 78701. [*Id.*]. The return also evidences no attempt to serve CoreSpace's registered agent, whose was registered with the Texas Secretary of State. [*Id.*].

Perhaps most importantly, Plaintiffs' counsel had knowledge before filing for default that CoreSpace was represented by counsel who intended to defend against Plaintiffs' claim: the alleged service was accomplished on May 7, 2014; Plaintiffs' counsel was emailed twice by

CoreSpace's lead counsel on May 18 and May 19; and, despite notice of CoreSpace's counsel, Plaintiffs sought a default ten days later on May 29, 2014. [Ex. B, ¶ 4]. Without the wrongful service upon an illegible employee, an improper Verified Return and ignoring their obligations to notify counsel prior to attempting default, Plaintiffs never could have procured a default judgment in the underlying state court. This Court should not tacitly approve Plaintiffs' misconduct and tactics by allowing the default judgment to stand, but instead should deny Plaintiffs' motion, vacate the judgment, and allow this case to proceed on the merits.

### 3.    Plaintiffs' Default Judgment is Void Due to Improper Service of Process

Under FED. R. CIV. P. 60(b)(4), a court may set aside a void judgment. "[I]nsufficient service of process under Rule 60(b)(4) implicates personal jurisdiction and due process concerns." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *Id.*[7]

As detailed in the preceding section and in CoreSpace's motion to dismiss [ECF No. 15], Plaintiffs' service of process on CoreSpace was woefully insufficient and fails to withstand the strict scrutiny placed upon service of process under Florida law. *See, e.g., Shurman v. Atl. Mortg. & Inv. Corp.*, 795 So. 2d 952, 954 (Fla. 2001) ("[B]ecause of the importance of litigants receiving notice of actions against them, statutes governing service of process are to be strictly construed and enforced."). Accordingly, this Court should vacate Plaintiffs' default judgment

---

[7] Citing *Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1368 (11th Cir.1982) (finding a judgment void under Rule 60(b)(4) where the defendant was not properly served); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding ... accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the ... action and [to] afford them an opportunity to present their objections." (citations omitted)). To the extent that the Court finds any other of the grounds in CoreSpace's motion to dismiss [ECF No. 7] impact the validity of the judgment and would, thus, fall under the purview of FED. R. CIV. P. 60(b)(4), CoreSpace adopts such arguments and incorporates them herein (or, alternatively, those included in CoreSpace's Corrected Motion for Leave to File Corrected Motion to Dismiss [ECF No. 15]).

against CoreSpace under FED. R. CIV. P. 60(b)(4).

### 4.   CoreSpace's Motion is Timely

"A motion under Rule 60(b) must be made within a reasonable time" and, when filed on the basis of, *inter alia*, mistake, inadvertence, surprise, excusable neglect, or fraud by the opposing party, "no more than —and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c).

In this case, CoreSpace's request for relief under Rule 60(b) is timely because it was made mere weeks after discovery the entry of default, and thereby this Court should deny Plaintiffs' instant motion.

### C.   Plaintiffs' Motion Fails to Support Outright Denial of CoreSpace's Motion to Dismiss and Motion to Vacate

Plaintiffs' motion is facially in conflict with existing law regarding resolution of cases removed after a default has been entered in state court. In essence, Plaintiffs argue that, because a default is an admission of liability pleaded in the complaint, then no further pleadings are proper and thus a final default judgment should be entered. [*See* ECF No. 8 at pp. 3-5]. Plaintiffs' authorities, however, do nothing to undermine this Court's ability to apply the tests under FED. R. CIV. P. 55(c) and 60(b) to vacate the default judgment and deny the motion for entry, nor do those authorities cited by Plaintiffs relate in any way to the Court's ability to consider—before or after the motion to vacate—a motion to dismiss under FED. R. CIV. P. 12. Rather, this Court should allow justice to be done by denying the instant motion, vacating Plaintiffs' default judgment, and fully considering the merits of CoreSpace's motion to dismiss and any response thereto. *See* [ECF No. 14] (Court's order requiring Plaintiffs to respond to CoreSpace's motion to dismiss "by no later than July 11, 2014).

**D.      CoreSpace's Objections to the Leary Affidavit [ECF No. 8-6]**

CoreSpace objects to the consideration and admissibility of the affidavit of Prieur J. Leary, III submitted in support of Plaintiffs' motion. Mr. Leary is the President of each Plaintiff. [*See* [ECF No. 1 at p. 38].

**Objection #1, Lack of Personal Knowledge:** The Leary affidavit fails to state that it is made with personal knowledge and that it is true and correct. This is a fatal defect that bars the entirety of the affidavit from being competent evidence upon which judgment may be entered.[8]

**Objection #2, Conclusory Statements:** The first sentence in the second paragraph of the Leary affidavit claims that "Defendants fraudulently induced Infolink Panama Corporation and FortaTrust to enter into transactions which prohibited them from entering into an alternative transaction, valued at $600.000." [ECF No. 8, Ex. 6, at p. 1.]. This statement is conclusory regarding the phrase and declaration that there was fraudulent inducement.

Additionally, each of the sentences in paragraphs 3 and 5 [*Id.* at p. 2] are also inadmissibly vague and conclusory because each makes declarations that are unsupported and without foundation. There is simply no detail or support for the allegation that Plaintiffs have incurred $600,000 in damages as alleged in paragraph 3. Similarly, there is no detail or support provided that Plaintiffs have made demand upon Defendants for payment, as is alleged in paragraph 5.

**Objection #3, Unauthenticated and Inadmissible Exhibit:** Exhibit A to the Leary Affidavit is a purported "Term Sheet" signed by one third party (Colo Crossing, Inc.) and

---

[8] *See, e.g., F.T.C. v. Home Assure, LLC*, 8:09-CV-547-T-23TBM, 2010 WL 1708777 (M.D. Fla. 2010) ("'A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.'") (quoting FED. R. CIV. P. 56(e)).

unsigned by Plaintiffs. [ECF No. 8, Ex. 6, pp. 4-5]. At the outset, the Leary affidavit fails to properly authenticate this document by affirmatively stating that this is a true and correct copy of the purported document.[9] Further, this document is inadmissible hearsay because it is being used by Plaintiffs to prove the existence of facts inside the record—i.e., that Plaintiffs actually did prepare for, intend to, and later refuse to close a transaction with Colo Crossing, along with the alleged value of the transaction and some purported link between that value and the damages allegedly suffered by Plaintiffs in this case.

For these reasons, this Court should strike the affidavit in its entirety.

**WHEREFORE**, Defendant CoreSpace, Inc. requests that the Court deny Plaintiffs' motion, vacate the default judgment entered in this case by the underlying state court on the grounds stated herein, and for all other relief to which CoreSpace have shown itself entitled. Alternatively, CoreSpace requests an evidentiary hearing regarding Plaintiffs' alleged damages.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 30, 2014, a true and correct copy of the foregoing was served via notice of electronic filing via CM/ECF to all parties in this case registered to receive such notice.

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorneys for Defendants
2385 N.W. Executive Center Dr., Suite 300
Boca Raton, Florida 33431
Tel: (561) 443-0800
Fax: (561) 998-0047
Primary email: jferrara@sfl-pa.com
Secondary email: scusack@sfl-pa.com

By: /s/ James T. Ferrara
James T. Ferrara
Florida Bar No. 764825

---

[9] *See, e.g., U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F. Supp. 2d 1322, 1334 (S.D. Ala.) (in context of summary judgment, which is analogous to the decision on the merits Plaintiffs' seek here, documents must be properly authenticated).

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| INFOLINK PANAMA CORPORATION, a Panama corporation, FORTATRUST USA CORPORATION, a Delaware corporation, | § § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | CASE NO.: 14-22099-CIV-MORENO |
| CORESPACE, INC, a Nevada corporation, MARK WULFF, an individual, and LIANA DUNLAP, an individual, | § § § § | |
| Defendants. | § | |

## DECLARATION OF BRIAN N. HAIL

I, Brian N. Hail, hereby declare as follows:

1.    My name is Brian N. Hail, and I am over 18 years old and of sound mind. The factual statements herein are within my personal knowledge and are true and correct.

2.    I am an attorney licensed to practice law in the State of Texas continuously since 1990.

3.    I am a partner at the Dallas law firm of Gruber, Hurst, Johansen, Hail Shank LLP (the "Firm").

4.    On April 28, 2014, CoreSpace, Inc. executed an engagement letter with the Firm with regard to the above-captioned litigation (the "Lawsuit"), a true and correct copy of which is attached hereto as Exhibit "D-1." Pursuant to the engagement letter, CoreSpace, Inc. in fact paid $5000 as a retainer to the Firm.

5.    Further, pursuant to the engagement letter, I located potential local counsel for CoreSpace, Inc. in the Lawsuit in Florida, namely Mr. James Ferrara with Shriaberg, Ferrera & Landau, P.C. ("Florida Counsel"). On May 19, 2014, CoreSpace signed an engagement letter with Florida Counsel and forwarded same to my attention, a true and correct copy of which is attached hereto as Exhibit "D-2."

DECLARATION OF BRIAN N. HAIL                                                                    PAGE 1

6.     On May 18, 2014, I sent an email to counsel for Plaintiffs, a true and correct copy of which is attached hereto as Exhibit "D-3." Counsel for Plaintiffs never responded to this email.

7.     On May 19, 2014, I sent an email to counsel for Plaintiffs, as also reflected in Exhibit "D-3." Counsel for Plaintiffs never responded to this email.

8.     Counsel for Plaintiffs made no known effort to communicate with my firm or me prior to any alleged default in the Lawsuit.

9.     I first became aware of the possibility that CoreSpace had been served on or about June 2, 2014 when CoreSpace's President, Liana Dunlap, made me aware that the Florida state court docket reflected that a default judgment had been entered. At that time, I was made aware that CoreSpace had previously received documents that are described in the Declarations of Mark Wulff, Liana Dunlap, and Christopher Schaffer, also filed in support of the present motion.

10.    Since June 2, 2014, CoreSpace has diligently pursued all available remedies, including removal of the state court suit to the United State District Court for the Southern District of Florida, researching, drafting, and filing of a multi-part motion to dismiss within seven days of removal, and conducting an extensive fact investigation regarding the insufficiency of service of process. To that end, CoreSpace now timely files its motion to vacate and set aside default judgment under various grounds justifying relief pursuant to Fed. R. Civ. P. 55(c) and 60(b).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 19, 2014 by: _____
                               SIGNATURE

                               Brian N. Hail_____
                               PRINT

DECLARATION OF BRIAN N. HAIL                                    PAGE 2

# EXHIBIT "A-1"

GRUBER | HURST | JOHANSEN | HAIL | SHANK

April 28, 2014

*Via Email:* llana@CoreSpace.com
CoreSpace, Inc.
c/o Llana Dunlap
1105 John W Carpenter Fwy
Dallas, TX 75247

Re:     Representation by Gruber Hurst Johansen Hail Shank LLP (the "Firm") involving the lawsuit filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida by InfiniteK Fannie Corp., et al. against CoreSpace Inc., et al. (the "Lawsuit")

Dear Mrs. Dunlap:

We appreciate your selection of GRUBER HURST JOHANSEN HAIL SHANK LLP to serve as counsel in the Lawsuit. This letter will confirm our agreement (the "Agreement") that the Firm will represent CoreSpace, Inc., Llana Dunlap, and Mark Wolff (the "Client", "you", or "your") in connection with the Lawsuit. The following paragraphs set forth the Agreement concerning our representation:

1.     Scope of Engagement. We will undertake to act as counsel for Clients in connection with the Lawsuit, and any subsequent appeals or other types of proceedings, including arbitration. Our engagement may from time to time involve providing counsel and advice, legal research and writing, discovery matters, communications with attorneys, with the Court, administrative Agencies, experts, consultants, witnesses, and others in connection with the Lawsuit, appearing and representing you in hearings in the Lawsuit, negotiating settlement and other matters of compromise with opposing counsel, parties, and other representatives, preparatory activities in connection with the foregoing matters, and other activities reasonably necessary or beneficial to your legal representation. Be advised that since the attorneys at the Firm working on this representation are not licensed in Florida and due to the current locale of the Lawsuit, it will be necessary to engage the services of Florida counsel to act as local counsel. We will assist the Clients in the selection of local counsel, but it will ultimately be the Clients' decision to engage Florida counsel on terms acceptable to the Clients and Florida counsel. Subject to any necessary Clients' approval, we will direct the services of Florida counsel.

CorpSpace, Inc.
April 28, 2014
Page 2

GRUBER | HURST | JOHANSEN | HAIL | SHANK

2.    Cooperation. The Firm will consult with you on all major decisions and will keep you fully informed of the status of the matters on which we are working, as well as our recommended strategies in handling such matters. You agree to fully cooperate with the Firm in all matters relating to the preparation and presentation of the Lawsuit, to fully and accurately disclose to us all facts that may be relevant to the matter or that we may otherwise request, and to keep the Firm apprised of developments relating to the matter. Clients would also need to make themselves reasonably available to attend meetings, discovery proceedings, conferences, hearings, and other proceedings. Your responsibilities would also include approving objectives, approving ranges of action and parties to the Litigation, and determining any acceptable terms of any compromise, settlement, or agreement.

The Firm will send you copies of pertinent correspondence, documents, and other materials that we prepare or receive in the course of this representation. We ask that you contact the Firm whenever you have any questions or comments regarding our services, fees, the status of this matter, or whenever any new facts or circumstances come to your attention that may materially impact the Lawsuit.

3.    No Warranties. You acknowledge that the Firm has told you that GruberHurst Johansen Hail Shank LLP can make no guarantees of a successful or satisfactory outcome of the matter or the costs, including expert witness fees and attorneys' fees associated with same. There can be no assurances, and we make no warranties, representations, or guarantees, about the particular results from any services or services provided by others at our request, as well as the response and timeliness of action by any governmental official or department, court of law, mediation, or arbitrator. You may win or lose in the Litigation, and any decision could be upheld, reversed, or modified on appeal.

4.    Fees. Brian Hail will serve as billing attorney and lead counsel, and will bill at his standard hourly rate of $495.00 per hour. The Firm anticipates that Chris Polkinghorn will assist as counsel at his standard hourly rate of $275.00. Carol Jones will serve as primary paralegal, and will bill at her standard hourly rate of $140.00 per hour. Our fees are based upon actual time incurred in connection with performing the services to be rendered pursuant to the Agreement. Billing rates for both attorneys and paralegal personnel are reviewed periodically (usually on an annual basis) and generally are revised at the beginning of each year to reflect an attorney's or paralegal's increased experience level and market conditions.

5.    Retainer. Clients agree to pay the Firm an initial retainer of $5,000. The Firm will bill against the retainer on a monthly basis, but Clients agree to replenish the retainer within 30 days of receipt of a statement as requested by the Firm. This balance will be maintained as security for all subsequent billings and will be applied against the

CoreSpace, Inc.
April 28, 2014
Page 3

GERBER | HURST | JOHANSEN | HALL | SHANK

Firm's final statement for services rendered and costs at the conclusion of the Litigation. Any unused retainer will be refunded to Clients.

6.      Expenses. We do not charge for normal office expenses, such as copying, routine long distance calls, faxes and postage. We will bill for major costs and expenses, including, for example, travel expenses, large copying jobs sent to an outside vendor, messenger services, court filing fees, exhibit preparation charges, consultant and expert witness fees, computerized legal research (such as Westlaw or Lexis) and other similar expenses. Further, you agree to pay within 30 days of the date of the statement all expenses advanced by the Firm and, upon request, to pay expenses in advance or directly to the vendor.

7.      Monthly Statements. This Firm will provide Clients with detailed statements for professional services rendered, as well as relevant disbursements. We will tender statements on a monthly basis for both fees and disbursements.

8.      Arbitration. Any dispute arising under this Agreement or involving the Firm (attorney)-Client relationship will be submitted to final and binding arbitration in Dallas, Texas and governed by the rules of the American Arbitration Association.

9.      Tax Implications. All or any part of a monetary recovery or settlement may be subject to income taxation. The Firm does not give any tax advice and you are advised to seek the counsel of an accountant or tax attorney to advise you as to the consequences of a recovery or settlement of the case.

10.     Withdrawal. The Firm reserves the immediate right to withdraw from representing you in the Arbitration, regardless of its status, in the event that:

        a.      We do not receive payment of any statement for fees and expenses within 30 days after receipt by you;

        b.      You engage in any conduct or activities contrary to our advice that, in our opinion, would constitute a violation of the Texas Disciplinary Rules of Professional Conduct or any other law; or

        c.      Our withdrawal from employment under this Agreement complies with the provisions of Rule 1.15 of the Texas Disciplinary Rules of Professional Conduct.

11.     Effective Date. The Agreement shall be effective as of the date of full execution by Clients.

CareSpace, Inc.
April 28, 2014
Page 4

GRUBER | HURST | JOHANSEN | HAIL | SHANK

12. Miscellaneous: Please read this agreement carefully. This is your agreement, it protects both you and your attorneys and will prevent misunderstandings in the future. If you do not understand it, or if it does not contain all of the agreements, please do not sign this Agreement.

13. Sole Agreement. This agreement constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the aforestated parties. Clients agree that this Agreement is to be substantially performed in Dallas County, Texas.

If you consent to this Agreement and desire to have the Firm represent you on the terms set forth above, please execute this Agreement in the space provided below, make a copy for your files, and return the original to my attention.

We are honored to have your trust and confidence in connection with this matter and will do our utmost to protect your interests. If you have any questions concerning this letter or our representation of you, please call.

Sincerely,

Brian N. Hail, Partner
GRUBER HURST JOHANSEN HAIL SHANK LLP

ACCEPTED, AGREED TO, AND AUTHORIZED TO EXECUTE:

By: _____
Liana Dunlap

By: _____
Mark Wulff

CareSpace, Inc.

By: _____
Liana Dunlap
Its: President and CEO

# EXHIBIT "A-2"



SHRAIBERG,
FERRARA &
LANDAU P.A.

Reply to:
James T. Ferrara
Direct Line: (561)448-0812
Email: jferrara@sfl-pa.com

May 8, 2014

Corespace, Inc.
c/o Brian Hall, Esquire
Gruber Hurst Johansen Hall & Shank
1445 Ross Avenue
Suite 2500
Dallas, TX 75202-2711
Via E-mail - bhall@ghjhlaw.com

Re:     Retention of Shraiberg, Ferrara & Landau, P.A. with regard to acting as
        local counsel in the matter of *Infolink Panama Corporation, et al. v.
        Corespace, Inc., Mark Wulff and Liana Dunlap*, pending in Miami-Dade
        County, Florida

Dear Mr. Wulff and Ms. Dunlap:

        We are pleased that you have asked us ("Shraiberg, Ferrara & Landau, P.A." or the
"Firm") to act as local counsel in the above matter for the above-named defendants (the
"Client"). The Firm will represent the Client on an hourly basis. This letter constitutes the entire
agreement between the Client and the Firm, describes the terms of our relationship, and sets forth
the general terms of our assistance to you in connection with the above-referenced matter. While
this letter is primarily intended to deal with the legal services provided by the Firm to the Client
in connection with the matter referenced above, these terms and conditions will also apply to any
additional legal services that the Client asks the Firm to provide in connection with this or any
additional legal matter unless both the Client and the Firm agree in writing to change one or
more of those terms or conditions. This letter and the Addendum shall control all obligations set
forth herein except as may be subsequently agreed upon in writing.

        I will be the primary attorney taking responsibility ("Attorney in Charge") for
your legal matter. My current standard hourly rate is $375.00, but based upon my firm's
relationship with Gruber Hurst, I will agree to lower it to $350.00 per hour. With that said, the
Firm makes every effort to utilize associates to draft documents. Our associates bill between
$200.00 and $300.00 an hour. Also, in light of our prior relationship with Gruber Hurst, we will
only be requesting a $500.00 cost retainer at this time. It is the policy of this Firm to hold the fee
retainer on account to be applied to the last month's billing, with all monthly bills rendered due

{1305/000/00230588}

Page 2 of 6

and payable upon receipt. Once the initial cost retainer is exhausted, the Client will be required to replenish it and, under all circumstances, is responsible for all costs incurred on behalf of the Client. Throughout the course of the Firm's representation of the Client, the Client will remit such fees and costs on a timely basis as are invoiced from the Firm, based on the Client's understanding that payment within invoice terms is a material condition of this relationship. To the extent the Firm's final fees are less than the balance of the Client's retainer, after deducting outstanding costs, if any, the balance shall be returned to the Client at the conclusion of the matter.

We will endeavor to serve the Client effectively and strive to represent its interests vigorously and efficiently. Any expressions on our part concerning the cost or outcome of your legal matters are expressions of our best professional judgment, but are not guarantees. Such opinions are necessarily limited by our knowledge of the facts and are based on the state of the law at the time they are expressed.

Our Firm will provide legal services to you and bill you for those services in accordance with the attached Addendum. Please review this letter and the Addendum in their entirety. If you have any questions or concerns regarding the foregoing terms and conditions, or the terms of the Addendum, do not hesitate to contact me. **Please acknowledge your understanding and approval of all the terms and conditions contained in this letter by signing and returning a copy of this letter. We would also request that the initial retainer of $500.00 be sent to us.** We will begin our representation of the Client upon receipt of the executed copy of this letter and the cost deposit.

Thank you for allowing us to be of service. We look forward to a successful relationship with you.

Sincerely,

SHRAIBERG, FERRARA & LANDAU, P.A.

By: _____
    James T. Ferrara

All the terms and conditions contained in this letter have been **REVIEWED, ACKNOWLEDGED AND ACCEPTED** this _19_ day of May, 2014.

_____          _____
Mark Wulff, individually            Liana Dunlap, individually

Corespace, Inc.

By: _____, its
    President

{1305/000/00230588}
    2385 N.W. Executive Center Drive · Suite 300 · Boca Raton, Florida 33431 · 561-443-0800 · Fax 561-998-0047

Page 3 of 6

## SHRAIBERG, FERRARA & LANDAU, P.A.
## STANDARD HOURLY FEE ADDENDUM

This Addendum sets forth the standards upon which the Firm will provide legal services to the Client and bill for those services. This Addendum accompanies a fee letter ("Accompanying Letter") addressed to a client or clients (jointly, severally and collectively, the "Client") and is part of the agreement between Shraiberg, Ferrara & Landau, P.A. (the "Firm") and the Client. This Addendum is incorporated by reference into the Accompanying Letter. To the extent any terms in the Accompanying Letter conflict with this Addendum, the provisions in the Accompanying Letter shall control.

1. **PROFESSIONAL UNDERTAKING:** The Attorney in Charge will have primary responsibility for the Client's representation and may, in his or her sole discretion, utilize other attorneys and legal assistants in the Firm who can accomplish the work. If at any time the Client has any questions, concerns or criticisms concerning the utilization of other attorneys or legal assistants, or any other matters, the Client should contact the Attorney in Charge.

2. **FEES:** The Firm takes into account many factors in billing for services rendered, and the Attorney in Charge will review all invoices before they are issued to ensure that the amount charged is appropriate. The principle factor is usually the Firm's schedule of hourly rates, and most invoices for services are the product of the hours worked multiplied by the Firm's hourly rates then in effect at the time the work is performed.

It is impossible to determine in advance how much time will be needed, since that depends on many things beyond our control. Any amounts we provide for the cost of all or part of our engagement are merely estimates.

Our schedule of hourly rates for attorneys and other members of our professional staff is based on a combination of years of experience, specialization in training and practice, level of professional attainment, and overhead costs. Currently, our hourly rates range from $110.00 for legal assistants to $425.00 for our most senior partners. We review our schedule of hourly rates annually, and may revise them at that time. If we change our rates, the new rates will go into effect immediately without special notice to the Client. Upon request, we will provide a client with the rates of those professional staff working on an engagement prior to issuing our invoice.

There may be circumstances where the work performed produces substantial value or a favorable result for the Client which may be far greater than originally anticipated. In such a situation, if the Firm and the Client then mutually agree, the Firm's fee could be greater than the hourly rates multiplied by the number of hours worked.

3. **COSTS:** It is usually necessary for us to incur, as agent for our clients, expenses for items such as filing fees, telephone conferencing services, travel, lodging, meals, substantial -- out of the ordinary -- photocopying volume and courier services. The Client will be responsible for all of these types of costs (i.e., out of the ordinary or third-party costs) incurred on the Client's behalf. However, the Client will not be charged for routine internal costs, such as

{1305/000/00230588}

2385 N.W. EXECUTIVE CENTER DRIVE · SUITE 300 · BOCA RATON, FLORIDA 33431 · 561-443-0800· FAX 561-998-0047

charges for long distance telephone calls, in-house routine photocopy services, faxes, valet parking, routine postage, etc.  In order to allocate these expenses fairly and to keep our hourly rates as low as possible for those matters which do not involve such expenditures, these items are separately itemized on our statements as "costs advanced," "costs incurred," or "disbursements."

Major out-of-pocket expenses, , will not be advanced by us unless special arrangements are made in advance.  Said expenses will be billed directly or forwarded to the Client.

4.  **BILLING:**  The Firm's invoices generally will be prepared and mailed during the month following the month in which services are rendered and costs advanced.  The Firm's invoices are due for payment upon receipt of the invoice.  When the Firm represents a client in litigation and a money judgment is obtained, the Firm may, at its option, take the Firm's outstanding fees and disbursements from the money judgment.  If the Firm represents the Client on more than one matter, the Firm reserves the right to apply balances from one matter against other matters.

5.  **RETAINER:**  It is the Firm's policy to require advance payments before the Firm renders services.  The Firm's retainer will be the amount set forth in the Accompanying Letter.  As the retainer is used by the Firm for payment of ongoing fees, the Client will replace it upon request.  If this is a litigation matter, the Firm's obligation to continue rendering legal services and advancing this matter to trial is dependent upon: (a) the Client being 100% current on all outstanding fee and cost obligations for a period beginning thirty (30) days prior to the first day of trial and continuing through the first day of trial; and (b) the payment by the Client at least thirty (30) days prior to the first day of a trial of a retainer equal to the amount estimated by the Attorney in Charge that will be incurred by the Client in fees and costs for the duration of the trial.  If either of the foregoing terms is not complied with, the Client agrees that the Firm has the right to immediately withdraw from further representing the Client.  The Client hereby agrees to release the Firm from any further obligation to proceed or from any liability that may result should the Firm elect to withdraw, as set forth in this paragraph.

6.  **SECURITY FOR FEES AND COSTS:**  Florida law provides the Firm with the right to impose a lien upon documents, money and other intangibles and materials coming into possession by the Firm to secure the payment of its fees and expenses.  This retaining lien, as well as appropriate charging liens, may be asserted by the Firm in appropriate circumstances.

7.  **EMPLOYMENT OF EXPERTS OR ADDITIONAL PROFESSIONALS:**  In the event the Firm deems it necessary to employ additional experts or professionals with specialized skills (e.g., accounting, surveying, appraisals, environmental audits, etc.), then, after consultation with (and the consent of) the Client, additional experts or professionals may be employed by the Firm.  The Firm will employ experts or professionals in the name of the Client or, at the discretion of the Firm, in the Firm's name on behalf of the Client.  The Client is, in either event, responsible to pay the fees and costs of such experts or professionals in full upon receipt of the expert's or professional's statement.  The Firm reserves the right to request and obtain an additional retainer to defray the fees and costs of experts or professionals employed in connection with a client matter.  All fees and costs of additional experts or professionals shall be subject to the security, interest and other applicable provisions of this Standard Hourly Fee Addendum.

Page 5 of 6

8.   **PAYMENT BY OTHERS:** Sometimes another party agrees to pay our client's legal fees and costs, or a court may order our client's adversary to pay all or part of its legal fees and costs. However, in such case, the Client remains primarily liable for payment of all fees and costs. Any amounts received from others will be credited to the Client's account. The Firm has the right to receive the higher of an amount awarded by the court or its hourly fees.

9.   **LATE PAYMENTS:** Payment of the Firm's billings is due upon receipt of the invoice. A monthly late fee or interest charge will be added for late payments of fees and/or costs. On the first day of each month, the balance of any invoice then unpaid for more than one (1) month will be subject to a charge of one and one-half percent (1-1/2%) per month. In no event will the rate be greater than permitted by applicable law. If invoices are not paid within the terms agreed between the Firm and the Client, the Firm will have the right to immediately withdraw from further representing the Client. The Client hereby agrees to release the Firm from any further obligation to proceed or from any liability that may result should the Firm elect to withdraw as set forth in this paragraph.

10.   **NON-PAYMENT OF FEES AND COSTS:** In the event of failure to pay any statement rendered when due, you agree that we may cease all legal services on your behalf or immediately withdraw from further representing the Client. The Client hereby agrees to release the Firm from any further obligation to proceed or from any liability that may result should the Firm elect to withdraw as set forth in this paragraph.

11.   **ATTORNEYS' FEES:** In the unlikely event that it is necessary to institute legal proceedings to collect the Firm's fees and costs, the Firm will also be entitled to a reasonable attorney's fee, paralegal fees and other costs of collection, even if such services and costs are provided by the Firm, including fees and costs for any arbitration, trial and appeal.

12.   **TERMINATION:** The Client will have the right to terminate the Firm's representation at any time, but the provisions of the Accompanying Letter and this Standard Fee Addendum related to payment and collection of fees and disbursements shall survive any such termination. The Firm has a reciprocal right to terminate the Firm's representation, subject to its obligation to give the Client reasonable notice to arrange other representation.

13.   **WAIVER:** A party's failure to insist on compliance or enforcement of any provision of this Agreement shall not affect the validity or enforceability or constitute a waiver of future enforcement of that provision or of any other provision of this Agreement by that party or any other party.

14.   **AMENDMENTS:** This Agreement may be amended at any time by mutual consent of the parties hereto, with any such amendment to be unenforceable unless in writing, signed by the Firm and the Client.

15.   **APPLICABLE LAW:** This Agreement shall be governed for all purposes by the internal laws of the State of Florida, without regard to provisions applicable to conflict of laws. If any provision of this Agreement is declared void, such provision shall be deemed severed from this Agreement, and all other provisions shall remain in full force and effect.

{1305/000/00230588}
2385 N.W. Executive Center Drive • Suite 300 • Boca Raton, Florida 33431 • 561-443-0800 • Fax 561-998-0047

Page 6 of 6

16.   **JURISDICTION AND VENUE:**   Any dispute resolution proceeding arising from or relating to this Agreement shall be instituted only in Palm Beach County, Florida, the place where the Client agrees this Agreement shall be deemed to have been executed.  Each party hereto submits to the exclusive jurisdiction of the State or Federal courts of the State of Florida.

All the terms and conditions contained in this letter have been **REVIEWED, ACKNOWLEDGED AND ACCEPTED** by Client this _19_ day of May, 2014.

Mark Wulff, individually

Liana Dunlap, individually

Corespace, Inc.

By _____ , its

President

# EXHIBIT "A-3"

## Bill Richmond

| | |
|---|---|
| **From:** | Brian N. Hail |
| **Sent:** | Monday, June 16, 2014 10:48 PM |
| **To:** | Bill Richmond |
| **Subject:** | FW: |

**From:** Brian N. Hail
**Sent:** Monday, May 19, 2014 10:08 PM
**To:** jason@xanderlaw.com
**Cc:** Joshua Sandler; Brian N. Hail
**Subject:** RE:

Mr. Weber,

Your client again communicated directly with my client after this email was sent to you. I realize that you may not have had time yet to communicate with your client on this issue, but I trust you will take care of this issue now. To be clear, there should be no communication by your client with any of my clients directly, period.

Further, you can let your client know we have no interest in settling his frivolous lawsuit, so there is nothing really to talk about anyway.

Sincerely,
Brian.

**From:** Brian N. Hail
**Sent:** Monday, May 19, 2014 9:23 AM
**To:** jason@xanderlaw.com
**Cc:** Brian N. Hail; Joshua Sandler
**Subject:**

Mr. Weber,

I am counsel for CoreSpace, Inc., Mark Wulff, and Liana Dunlap with regard to the suit you have recently filed in Florida on behalf of Infolink Panama Corporation and Fortatrust, USA Corporation. It is my understanding that you have begun the process of attempting to serve my clients, but to date, have been unsuccessful. If I am incorrect on this point, please advise.

To make the process easier, I respectfully suggest you attempt service by mail upon me as counsel for Defendants per Florida Rule of Civil Procedure 1.070. If in good form, I intend to accept service.

Along those lines, I anticipate I will be filing suit in Dallas on behalf of my other client, Ace Colocation, Inc. against Infolink Panama Corp., Fortatrust USA Corp., Groupo Pronto, and IT Experts S.A. I am not sure if you represent all of these parties, but to the extent you do, please advise if you will accept service per the rules of the Northern District of Texas.

Finally, if you would be kind enough to tell Mr. Leary to cease contacting my clients, it would be appreciated. He contacted them as recently as 5/14 and apparently is unaware of Florida Rule of Civil Procedure 1.370, that Requests for Admission are not effective until service of the lawsuit. I hope this ignorance is not informing him of the actual status of this case.

I look forward to your response.

Best wishes,

Brian N. Hall


Board Certified-Civil Trial Law
Texas Board of Legal Specialization
**Gruber | Hurst | Johansen | Hail**
Fountain Place
1445 Ross Avenue, Suite 2500
Dallas, TX 75202
214-855-6800 (Main)
214-855-6804 (Direct)
214-855-6808 (Fax)
bhall@ghjhlaw.com


Brian N. Hall
Partner
Board Certified-Civil Trial Law
Texas Board of Legal Specialization

**GRUBER | HURST | JOHANSEN | HAIL | SHANK**
1445 Ross Avenue | Suite 2500
Dallas, Texas 75202-2711
214.855.6804 Voice
214.855.6808 Fax
Email: bhall@ghjhlaw.com
www.ghjhlaw.com



Gruber Hurst Johansen Hail Shank is a Limited Liability Partnership formed under the laws of the State of Texas. This message (and any attached files) is intended only for the use of the addressee(s). This electronic transmission (and the documents accompanying it) may contain trade secrets, copyrighted materials, and confidential information belonging to the sender that is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510 and 2521 and may be legally privileged. If you are not the intended recipient, any dissemination, copying or distribution of this message or files attached with it is strictly prohibited. If you have received this communication in error, please notify Gruber Hurst Johansen Hail Shank LLP immediately by telephone (214-855-6800) and destroy the original message.

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

INFOLINK PANAMA CORPORATION,               §
a Panama corporation, FORTATRUST           §
USA CORPORATION, a Delaware                §
corporation,                               §
                                           §
        Plaintiffs,                        §
                                           §
                                           §
v.                                         §        CASE NO.: 14-22099-CIV-MORENO
                                           §
CORESPACE, INC, a Nevada corporation,      §
MARK WULFF, an individual, and             §
LIANA DUNLAP, an individual,               §
                                           §
        Defendants.                        §

## DECLARATION OF LIANA DUNLAP

I, Liana Dunlap, in my capacity as President and CEO of Defendant CoreSpace, Inc., do hereby declare as follows:

1.      My name is Liana Dunlap, and I am over 18 years old and of sound mind. I am President and CEO of Defendant CoreSpace, Inc. ("CoreSpace"). The factual statements herein are within my personal knowledge and are true and correct.

2.      CoreSpace is a Nevada corporation with its principal place of business in Texas and registered to conduct business in Texas.

3.      CoreSpace has never operated, conducted, engaged in, or carried on a business or business venture in Florida and do not have and has never had an office or agency in Florida. CoreSpace has never engaged in solicitation or service activities in Florida or intentionally directed solicitation or service activities towards Florida. CoreSpace conducts its business from Texas. CoreSpace has had a small, insubstantial number of customers who claim to have at least one address in Florida, and whose connection to CoreSpace is through CoreSpace's online computer servers located in Texas. Such servers are not purposefully directed towards Florida and are not the basis from which Plaintiffs' claims arise in this case. CoreSpace does not transact business in Florida and is not registered with the Florida Secretary of State. CoreSpace has never had offices, vehicles, real property, fax numbers, telephone numbers, message services, mailing addresses or bank accounts, among other things, in Florida.

**DECLARATION OF LIANA DUNLAP**                                    **PAGE 1**

4.      CoreSpace does not actually employ nor has it ever employed any person named "Mark Schaffer," which is the name listed in the Verified Return of Service filed by Plaintiffs in this case. The position I.T. Director at CoreSpace is neither an officer or board member level.

5.      Ace Colocation, Inc. ("Ace') is a customer of CoreSpace and has affiliated ownership with CoreSpace. Ace is a Nevada corporation with its principal place of business in Texas and authorized to do business in Texas. I am the CEO and President of Ace. Ace is a party to five contracts with Plaintiffs: (a) an Agreement for Colocation and Purchase ("Colocation Agreement"); and (b) an Asset Purchase and Sale Agreement ("Purchase Agreement"); (c) Bill of Sale; (d) Colocation Agreement and Service Order Form; and (e) Letter Agreement regarding Consulting.

6.      CoreSpace did negotiate and execute a Mutual Confidentiality Agreement (a/k/a Non-Disclosure Agreement) with FortaTrust USA Corporation in or around November 2013. CoreSpace did not negotiate and execute the Colocation Agreement with Plaintiffs, and CoreSpace did not negotiate and execute the Purchase Agreement with Plaintiffs.

7.      No negotiations took place between CoreSpace and either Plaintiff regarding the Colocation Agreement or Purchase Agreement. No in-person negotiations took place in Florida between Ace and Plaintiffs regarding the Colocation Agreement and Purchase Agreement.

8.      Prior to execution of the Colocation Agreement and Purchase Agreement, Plaintiffs inquired about the fact that Ace—and not CoreSpace—would be the purchasing entity. Plaintiffs were told that Ace is a client of CoreSpace.

9.      I have successfully accessed the domain http://www.fortatrust.com, which remains a live and operating website as of June 13, 2014.

10.      At the time of the illegitimate service in this case, CoreSpace's registered agent, as submitted to the Texas Secretary of State, was and remains Capitol Corporate Services, Inc., whose address is 800 Brazos, Suite 400, Austin Texas 78701.

11.      On or about May 12-14, 2014, I first noticed the documents that Plaintiffs in this case claim represented process service. At the time I first noticed the documents, I thought the documents were merely printouts from Mark Wulff of documents emailed to me previously by Plaintiffs on or about April 17, 2014. With my limited legal knowledge and expectation of receiving service directly or through our registered agent, Capitol Services Corporation of Austin, Texas, there was no indication to me from the face of the documents that they had been served by a process server or that they purported to be actual service of process. I simply did not recognize the documents were allegedly actual service of process and, accordingly, I did not speak with any attorneys regarding receipt of these documents at the time.

12.      On or about June 2, 2014, while checking the online docket for the Florida state court in which the lawsuit had been filed, I first noticed a motion for default judgment on file. After consulting with counsel for the first time regarding these documents, this was the first moment I recognized the possibility that Plaintiffs had attempted service by leaving the documents I had found on my desk as actual service of process.

**DECLARATION OF LIANA DUNLAP**                                          **PAGE 2**

13.    On April 28, 2014, CoreSpace, Inc. executed an engagement letter with the law firm of Gruber Hurst Johansen Hail Shank LLP (the "Firm") with regard to the above-captioned litigation (the "Lawsuit"). Pursuant to the engagement letter, CoreSpace, Inc. in fact paid $5000 as a retainer to the Firm.

14.    Further, pursuant to the engagement letter with the Firm, we asked and did have Mr. Hail locate potential local counsel for CoreSpace, Inc. in the Lawsuit in Florida, namely Mr. James Ferrara with Shriaberg, Ferrera & Landau, P.C. ("Florida Counsel"). On May 19, 2014, CoreSpace signed an engagement letter with Florida Counsel and paid $500 as a retainer to Florida Counsel.

15.    CoreSpace's failure to timely answer or otherwise respond to Plaintiffs' complaint is simply due to mistake or excusable mistake, not any type of intentional or willful act or omission.

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.**

Executed on June 19, 2014 by:    _Tiana Dunlap_
                                 SIGNATURE

                                 _6/19/14_
                                 PRINT

**DECLARATION OF LIANA DUNLAP**                              **PAGE 3**

# EXHIBIT "C"

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

INFOLINK PANAMA CORPORATION,
a Panama corporation, FORTATRUST
USA CORPORATION, a Delaware
corporation,

     Plaintiffs,

v.

CORESPACE, INC, a Nevada corporation,
MARK WULFF, an individual, and
LIANA DUNLAP, an individual,

     Defendants.

CASE NO.: 14-22099-CIV-MORENO

## DECLARATION OF CHRISTOPHER SHAFFER

I, Christopher Paul Shaffer, do hereby declare as follows:

1.     My name is Christopher Paul Shaffer, and I am over 18 years old and of sound mind. I am the director of information technology at Defendant CoreSpace, Inc. ("CoreSpace"). I am not an officer or member of the board of directors at CoreSpace. The factual statements herein are within my personal knowledge and are true and correct.

2.     At approximately 10:00 a.m. on May 7, 2014, I was working at CoreSpace when I heard the front doorbell rang. I answered the door to find a man I later learned was Carlos Barrera from Legal Process Service & Investigations, LLC. Mr. Barrera said he was looking for "Mark Wulff" and "Liana Dunlap." I had not seen them in the office that day so told him they were not present. Mr. Barrera did not ask for any other persons, whether by name specifically or title (officer, director, etc.). Mr. Barrera asked me my name and position, which I gave him.

3.     Mr. Barrera then handed me a sealed manila envelope and said they were "for the company." Mr. Barrera did not give any indication regarding the nature or contents of the envelope, much less that it contained what I later found out were documents related to a lawsuit. The envelope itself also did not have any markings or labels to indicate its nature or contents, much less that that is contained what I later found out were documents related to a lawsuit. Mr. Barrera then left the building.

4.     Shortly thereafter on that same day, I gave the still-sealed envelope to Mark Wulff. I did not have any further interaction with the envelope or its purported contents. I did not recognize at any time that the envelope contained what is purported to be actual process.

DECLARATION OF CHRISTOPHER SHAFFER          PAGE 1

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 19, 2014 by:

_____
SIGNATURE

_____
PRINT

DECLARATION OF CHRISTOPHER SHAFFER                     PAGE 2

# EXHIBIT "D"

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

INFOLINK PANAMA CORPORATION,  §
a Panama corporation, et al.              §
                                                      §
        Plaintiffs,                              §
                                                      §
                                                      §
v.                                                   §        CASE NO.: 14-22099-CIV-MORENO
                                                      §
CORESPACE, INC, a Nevada corporation,  §
et al.,                                            §
                                                      §
        Defendants.                          §

## DECLARATION OF MARK WULFF

I, Mark Wulff, do hereby declare as follows:

    1.      My name is Mark Wulff, and I am over 18 years old and of sound mind. The factual statements herein are within my personal knowledge and are true and correct.

    2.      On or about May 7, 2014, I received a sealed manila envelope from Christopher Shaffer, an employee at CoreSpace. The envelope itself also did not have any markings or labels to indicate its nature or contents, much less that that is contained what I later found out were documents related to a lawsuit. I soon thereafter left the still-sealed envelope in a pile of other items in my workspace.

    3.      Approximately three to seven days later, I opened the enveloped, noted only that the documents appeared to be related to lawsuit documents that had previously been emailed to CoreSpace on or about April 17, 2014, and put the contents of the envelope on the desk of CoreSpace President, Liana Dunlap, but did not speak with her about the documents as she was not present at the time. I did not have any further substantive contact with the envelope or its contents. I did not recognize at any time that the envelope contained what is purported to be actual process. I did not speak with any attorneys regarding receipt of these documents.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 19, 2014 by:     _Mark Wulff_____
                                                      SIGNATURE

                                                      _MARK WULFF_____
                                                      PRINT

# EXHIBIT "E"

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

INFOLINK PANAMA CORPORATION,
a Panama corporation and FORTATRUST
USA CORPORATION, a Delaware
corporation,

      Plaintiffs,

v.

CORESPACE, INC., a Texas corporation,
MARK WULFF, an individual, and
LIANA DUNLAP, an individual,

      Defendants.

_____/

CIRCUIT/CIVIL DIVISION

CASE NO.: 14-10104 CA 04

THE ORIGINAL
FILED ON:

MAY 2 9 2014

IN THE OFFICE OF
CIRCUIT COURT DADE CO., FL

## NOTICE OF FILING

    Plaintiffs, INFOLINK PANAMA CORPORATION, a Panama corporation and

FORTATRUST USA CORPORATION, a Delaware corporation, hereby give notice of filing the

attached Verified Return of Service of Summons and Summons served on Defendant,

CORESPACE, INC., a Texas corporation, on May 7, 2014.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 29th day of May, 2014, the foregoing was mailed to

Corespace, Inc., 7505 John W. Carpenter Fwy, Dallas, TX 75247.

XANDER LAW GROUP, P.A.
*THE WHITE BUILDING*
One N.E. 2nd Avenue
Suite 200
Miami, Florida 33132
Tel/Fax (305) 767-2001
wayne@xanderlaw.com

By: _____
WAYNE R. ATKINS
Fla. Bar No.: 84000

Xander Law Group, P.A.
One NE 2nd Avenue, Suite 200, Miami, FL 33132 • (305) 767-2001 (tel)

Filing # 14190498 Electronically Filed 05/29/2014 12:06:20 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

INFOLINK PANAMA CORPORATION,                    CIRCUIT/CIVIL DIVISION
a Panama corporation and FORTATRUST
USA CORPORATION, a Delaware                      CASE NO.:  14-10104 CA 04
corporation,

      Plaintiffs,

v.

CORESPACE, INC., a Texas corporation,
MARK WULFF, an individual, and
LIANA DUNLAP, an individual,

      Defendants.
_____/

## NOTICE OF FILING

    Plaintiffs, INFOLINK PANAMA CORPORATION, a Panama corporation and FORTATRUST USA CORPORATION, a Delaware corporation, hereby give notice of filing the attached Verified Return of Service of Summons and Summons served on Defendant, CORESPACE, INC., a Texas corporation, on May 7, 2014.

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on this 29th day of May, 2014, the foregoing was mailed to Corespace, Inc., 7505 John W. Carpenter Fwy, Dallas, TX  75247.

                    XANDER LAW GROUP, P.A.
                    *THE WHITE BUILDING*
                    One N.E. 2nd Avenue
                    Suite 200
                    Miami, Florida 33132
                    Tel/Fax (305) 767-2001
                    wayne@xanderlaw.com

                    By: s/Wayne R. Atkins
                         WAYNE R. ATKINS
                         Fla. Bar No.: 84000

# VERIFIED RETURN OF SERVICE

State of Florida                      County of Dade                      Circuit Court

Case Number: 14-10104 CA 04

Plaintiff:
**INFOLINK PANAMA CORPORATION, ET AL**

vs.

Defendant:
**CORESPACE, INC., ET AL.**

For:
Jason H Weber, Esq.
XANDER LAW GROUP, P.A.
300 South Biscayne Blvd
#1802
Miami, FL 33131

THE ORIGINAL
FILED ON:

MAY 2 9 2014

IN THE OFFICE OF
CIRCUIT COURT DADE CO., FL

Received by LEGAL PROCESS SERVICE & INVESTIGATIONS, LLC on the 25th day of April, 2014 at 8:58 am to be served on **CORESPACE, INC, 7505 JOHN W CARPENTER FWY, DALLAS, TX 75147.**

I, Carlos Barrera, do hereby affirm that on the 7th day of May, 2014 at 10:00 am, I:

**EFFECTED CORPORATE SERVICE** by delivering a true copy of the **SUMMONS AND COMPLAINT WITH EXHIBITS** with the date and hour of service endorsed thereon by me to **MARK SCHAFFER** as **I.T. DIRECTOR** and who stated they are an **EMPLOYEE OF THE REGISTERED AGENT OR CORPORATION** at the address of **7505 JOHN W CARPENTER FWY, DALLAS, TX 75147** and who further stated that the Registered Agent was not present, therefore, was served in compliance with F.S. 48.081 (3a).

I do hereby certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. Under penalty of perjury I declare that the facts contained herein are true and correct. NO NOTARY REQUIRED PURSUANT TO F.S. 92.525(S)

_____
**Carlos Barrera**
Process Server

**LEGAL PROCESS SERVICE & INVESTIGATIONS,
LLC**
8776 SW 72nd Street
#492
Miami, FL 33173
(305) 412-1178
Our Job Serial Number: LIM-2014000854

Copyright © 1992-2011 Database Services, Inc - Process Server's Toolbox V6.5n

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

INFOLINK PANAMA CORPORATION,
a Panama corporation, FORTATRUST
USA CORPORATION, a Delaware
corporation,

CIRCUIT/CIVIL DIVISION

CASE NO.: 14-10104 CA 04

      Plaintiffs,

v.

CORESPACE, INC., a Texas corporation,
MARK WULFF, an individual, and
LIANA DUNLAP, an individual,

      Defendants.

_____/

## CIVIL ACTION SUMMONS

THE STATE OF TEXAS:
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant:

          Corespace, Inc.
          7505 John W. Carpenter Fwy
          Dallas, TX 75247

      Each Defendant is required to serve written defenses to the Complaint or Petition on **Jason H. Weber, Esquire**, Plaintiffs' attorney, whose address is: **XANDER LAW GROUP, P.A., One N.E. 2nd Avenue, Suite 200, Miami, Florida 33132**, within twenty (20) days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiffs' attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

      DATED on _____ 3 2014, 2014.

                      Clerk of the Court



                      BY: _____
                      As Deputy